[L. A. No. 176.   Department Two.—May 25, 1897.]

## JOSEPH A. COOK, EXECUTOR, ETC., RESPONDENT, *v.* W. W. COCKINS, APPELLANT.

FRAUD UPON CREDITORS — VOLUNTARY TRANSFER FROM INSOLVENT HUS-
BAND TO WIFE — PROOF OF FRAUDULENT INTENT — CONSTITUTIONAL
LAW—AMENDMENT OF CODE NOT RETROACTIVE.—The amendment of
1895 to section 3442 of the Civil Code, which provides "that any trans-
fer or encumbrance of property, made or given voluntarily, or without
a valuable consideration, by a party while insolvent, or in contempla-
tion of insolvency, shall be fraudulent and void as to existing creditors,"
prescribes not merely a rule of evidence, but also a rule of property
which cannot be given retroactive effect upon transfers made before the
passage of the amendment, but such transfers must be governed by the
statute in force when the transfer was made; and a voluntary transfer
from an insolvent husband to his wife, without consideration, made be-
fore the adoption of that amendment, cannot be presumed fraudulent
as to creditors, as matter of law, at a trial had after the passage of the
amendment; but it is incumbent upon a creditor contesting it to prove
the fraudulent intent of the husband as matter of fact.

ID.—BONA FIDE TRANSFER IN PURSUANCE OF AGREEMENT.—Where it ap-
pears that the husband, while in prosperous circumstances and in the
conduct of a business in the state of New York, had agreed with his
wife that he would convey to her his California property as soon as he
obtained title thereto, and the transfer in question was made in good
faith in pursuance of such agreement, for a nominal consideration paid
by the wife, and without any knowledge on the part of the wife that
the husband had any creditors in California, and at a time when his
business in New York was not in an insolvent condition, there is no
evidence of fraudulent intent, in the matter of the consideration
which would vitiate the transfer, as against a creditor in California,
who brought an attachment suit six months after the deed was made
and delivered, though prior to its acknowledgment and record.

ID.—NATURE OF INSOLVENCY — MEANS MAY EXIST IN ANOTHER STATE.—
A debtor is insolvent when he is unable to pay his debts from his own
means, as they become due; and it is not essential that the means from
which the debts are to be paid must exist in this state; nor is the
debtor to be considered insolvent merely because he has not means in
this state to pay his creditors here, outside of the property transferred
to his wife in this state, if, at the time of the transfer, he had sufficient
means in another state to pay all of his creditors.

ID.—EVIDENCE—DECLARATIONS OF HUSBAND AFTER CONVEYANCE.—State-
ments made by the husband after the conveyance made by him to his
wife, tending to show that the deed was made to avoid the attachment,
or to defraud the attaching creditor, cannot be received as imparting
verity, or to overthrow the title of the wife, if any doubt is left in the
mind of the court that they truly reflected the situation, when the deed
was made.

APPEAL from an order of the Superior Court of Riverside County denying a new trial.   J. S. NOYES, Judge.

The facts are stated in the opinion.

*Collier & Evans,* and *Francis J. Heney,* for Appellant.

The amendment of 1895 to section 3442 of the Civil Code, which, at the time of the trial of this case, provided that the law would conclusively presume fraud from facts such as were proven in this case, should be considered as governing the evidence, and going strictly to the remedy, and is not to be deemed retroactive or unconstitutional.   (*Himmelman* v. *Carpenter,* 47 Cal. 46; *Fales* v. *Wadsworth,* 23 Me. 555; *Tulley* v. *Tranor,* 53 Cal. 278; Cooley's Constitutional Limitations, 353.)   Encumbered property in a foreign state should not be considered in determining the question of solvency as against residents of this state; and the husband, having no other property in this state at the time of transfer to his wife, was in law insolvent.   (2 Bigelow on Frauds, 195; *Bartholomew* v. *McKinstry,* 6 Allen, 567; *Baker* v. *Lyman,* 53 Ga. 339; *Elwell* v. *Walker,* 52 Iowa, 256–64; *Heath* v. *Page,* 63 Pa. St. 116; 3 Am. Rep. 533; *Church* v. *Chapin,* 35 Vt. 223.)   The transfer to the wife was without a valuable consideration, and therefore void as against creditors.   (*Scoggin* v. *Schloath,* 15 Or. 380; *Elwell* v. *Walker, supra.*)   The conveyance is also void because voluntary.   (2 Bigelow on Frauds, 144.)

*J. F. Conkey,* for Respondent.

An unrecorded deed is good as against a subsequent attachment.   (*Le Clert* v. *Oullahan,* 52 Cal. 252; *Morrow* v. *Graves,* 77 Cal. 218; *Plant* v. *Smythe,* 45 Cal. 161; *Hoag* v. *Howard,* 55 Cal. 564.)   A voluntary conveyance made to a member of the grantor's family in order to provide a home for his wife and family, having other property sufficient to pay all his debts, is not fraudulent as to creditors.   (*Morgan* v. *Hecker,* 74 Cal. 540; *Gridley* v. *Watson,* 53 Ill. 186; *Carson* v. *Foley,* 1 Iowa,

524; *Moore* v. *Page*, 111 U. S. 117; *Jones* v. *Clifton*, 101 U. S. 225–31; *Cole* v. *Tyler*, 65 N. Y. 73; *Albertoli* v. *Branham*, 80 Cal. 631; 13 Am. St. Rep. 200.) A man is not insolvent in law merely for want of means in this state to pay his debts if he have means elsewhere. (*Thompson* v. *Paige*, 16 Cal. 77.) The question whether a transfer of property was made with fraudulent intent is one of fact and not of law. (*Morgan* v. *Hecker, supra.*) The burden of establishing the fact that this deed was fraudulent rests upon the defendant Cockins. (*Ross* v. *Wellman*, 102 Cal. 1; *Hussey* v. ˙*Castle*, 41 Cal. 239; *Griffith* v. *Cox*, 79 Ky. 562.) Plaintiff took her title and Cook conveyed to her under the law as it stood prior to 1895. Mrs. Cook's rights had vested in the land. (*Albertoli* v. *Branham, supra; Mowry* v. *Heney*, 86 Cal. 471.) And it was not competent for the legislature to change those rights by the passage of an *ex post facto* law. (*Sharp* v. *Blankenship*, 59 Cal. 288; *Greer* v. *Blanchar*, 40 Cal. 194.) Statutes are not to be so construed as to have a retrospective effect, unless such construction be required in the most explicit terms; the presumption being that they are to operate prospectively and not to impair vested rights. (*McCrea* v. *Craig*, 23 Cal. 522–25; *Vanderpool* v. *La Crosse etc. R. R. Co.*, 44 Wis. 652; *Sharp* v. *Blankenship, supra;* Civ. Code, sec. 3.) The agreement of Cook, to have the land deeded to his wife as soon as he got the sheriff's deed, in consideration of her letting him dispose of the Auburn house, and her parting with her inchoate right of dower therein, and putting her money into the California lands, having been carried out, takes the deed out of the category of voluntary conveyances, and makes it a conveyance for value. (*Hussey* v. *Castle, supra; Ryan* v. *Tomlinson*, 39 Cal. 639; *Cottrell* v. *Smith*, 63 Iowa, 181.)

CHIPMAN, C.—On February 13, 1894, Caroline M. Cook, now deceased (referred to herein as plaintiff), wife of Joseph A. Cook, filed her verified complaint in the superior court of Riverside county, alleging owner-

ship of certain land situated therein, and claiming an undivided one-fourth interest in the land, and an ownership of an undivided three-fourths interest in the same land in the defendant, and praying for partition of their several interests. The defendant filed a verified answer denying that the plaintiff was the owner of any interest in said land. For a separate answer to the complaint the defendant alleged:

That defendant and said Joseph A. Cook, on January 31, 1891, became the owners as tenants in common of the land, by virtue of certain legal proceedings, in the proportion, to wit, the defendant an undivided three-fourths interest and the said Joseph A. Cook an undivided one-fourth interest, and that they were such owners in fact at the commencement of the action; that the interest of said Joseph A. Cook was subject to the lien and claim of defendant by virtue of proceedings in attachment commenced by him against the said Joseph A. Cook in the superior court of Los Angeles county; that a writ duly issued October 22, 1892, and was served by levy on the interest of said Joseph A. Cook in said land November 5, 1892; that defendant recovered judgment in said action December 13, 1893, against the said Joseph A. Cook for $1,906.92 and $126.20 costs; that said judgment became a lien on the interest of said Joseph A. Cook in said land on and after November 5, 1892, and has not been paid but is still due; and that said lien was in full force when this action was begun; that defendant had caused execution to issue on said judgment and to be placed in the hands of the sheriff of Riverside county, and had caused a transcript of the judgment to be filed in the county of Riverside as required by law, and was proceeding to sell said property. Further answering the defendant alleged:

That on January 31, 1891, the said Joseph A. Cook was and continued to be a resident of the state of New York, and was at that time indebted to defendant and

continued to be indebted to the date of this action; that
the said Joseph A. Cook on January 31, 1891, and prior
thereto, was insolvent, and aside from his interest in
said property had no assets or property with which to
pay defendant's said claim.

That on November 26, 1892, there was filed for record
in the office of the recorder of San Diego county (from
which Riverside county was in part afterward taken) a
paper purporting to be a conveyance from said Joseph
A. Cook to his wife, Caroline M. Cook, plaintiff in this
action; that said conveyance purported to be acknow-
ledged November 17, 1892; that as to defendant it was
and is void in that it was without consideration and
voluntary; that said conveyance was made with the
purpose on the part of said Joseph A. Cook to hinder,
delay, and defraud the defendant in the collection of his
said claim, and that the said conveyance was accepted
and received by the said plaintiff with full knowledge
on her part that the same was made with intent to
hinder, delay, and defraud the creditors of said Joseph
A. Cook, and particularly defendant. That at the date
of said pretended conveyance, plaintiff well knew that
the said Joseph A. Cook was insolvent; that at the date
of said conveyance, for a long time prior thereto, and
ever since said date, the said Joseph A. Cook was in-
debted to defendant in the sum of about $2000. By a
supplemental answer defendant avers that since the fil-
ing of his answer in the action the execution issued upon
the judgment above referred to has been served, the
property duly sold, and that more than six months hav-
ing elapsed since said sale the sheriff of said Riverside
county executed his deed to defendant of all the interest
of the said Joseph A. Cook in the property described in
the complaint.

The cause was tried by the court without a jury, and
its decision was for the plaintiff; findings of fact and
conclusions of law were filed, and an interlocutory decree
entered directing partition to be made and appointing

three referees for that purpose. A motion for a new trial was overruled, and this appeal is from the order of the court denying new trial.

Certain facts are not disputed, to wit: That in January, 1891, the property in question was acquired through judicial proceedings—by Joseph A. Cook an undivided one-fourth, and by defendant an undivided three-fourths interest as tenants in common; that subsequently by deed dated June 1, 1891, said Joseph A. Cook conveyed his interest in the land to his wife, the plaintiff; that this deed was acknowledged November 17, 1892, and recorded November 26, 1892; that at the date of the deed said Joseph A. Cook was indebted to defendant about the sum of $2000; that in 1891, and prior thereto, and until about 1894 or 1895, plaintiff and her husband resided in the state of New York; that, about as stated in the answer, defendant became the owner in 1895 of · whatever interest Joseph A. Cook had in the land through proceedings in attachment by which levy was made on said interest November 5, 1892.

1. The ninth finding attacked by defendant is as follows: "That on the first day of June, 1891, said Joseph A. Cook, being the owner in fee of an undivided one-fourth interest in the premises described in the complaint, and of all the appurtenances thereto, by deed dated, executed, and delivered that day, duly transferred and conveyed all of his right, title, and interest in said premises to the plaintiff in this action, who thereupon became, ever since has been, and still is the owner of said Joseph A. Cook's interest in said premises."

The objection to this finding is that it is against the evidence, for that the evidence shows without conflict: 1. That the conveyance so made June 1, 1891, by Joseph A. Cook to his wife, Caroline A. Cook, was fraudulent and void as to defendant; 2. That at said date, and before, defendant was, and ever since he has been, an existing creditor of said Joseph A. Cook; 3. That at said date said Joseph A. Cook had no other property in the state of California than the property in question, and

that the only other property he owned was in the state of New York, encumbered to the extent of $3,000; 4. That the indebtedness of said Joseph A. Cook at the date of said conveyance arose out of a transaction in the state of California, at which time defendant resided and still resides in the state of California, and that the said Joseph A. Cook, until a short time before the commencement of this action, resided in the state of New York; 5. That said conveyance was voluntary and without valuable consideration.

The appellant does not urge in his brief that actual fraud was shown; the alleged fraud upon which he apparently relies is constructive, and results, if at all, from his view of what is a just application of the facts to what he deems to be a proper application of section 3442 of the Civil Code to the case. When this action was brought this section read as follows: "In all cases arising under section 1227, or under the provision of this title, except as otherwise provided in section 3440, the question of fraudulent intent is one of fact, and not of law; nor can any transfer or change be adjudged fraudulent solely on the ground that it was not made for a valuable consideration."

Before the action was tried, and nearly four years after the transfer, the legislature amended this section by adding the following: "Provided, however, that any transfer or incumbrance of property, made or given voluntarily or without a valuable consideration, by a party while insolvent, or in contemplation of insolvency, shall be fraudulent and void as to existing creditors."

Appellant urges with much earnestness that section 3442 of the Civil Code as thus amended should be considered in determining the rights of the parties at the time of the trial; that the amendment merely establishes a rule of evidence, and goes strictly to the remedy and in no sense to the right; that no retroactive effect is necessary to be given so as to make it obnoxious to the rule relating to retroactive legislation, and that, thus considered, a conclusive presumption of intent to defraud must flow from the facts in this case.

On the other hand, the plaintiff contends that this section is something more than a rule of evidence—that it is a rule of property as well, and cannot as amended destroy vested property rights by being given retroactive effect.

It seems to me that this latter is the true view. The transfer was dated June 1, 1891. The husband testified that it was delivered the same day to the wife. She testified that she thought it was delivered in the following September or October. The trial court found that the deed was executed and delivered on June 1, 1891. As there was no other testimony on this point, we are not at liberty to say that the court erred in accepting that of the husband. Without now considering the effect of the change in the statute upon this case, appellant's point deserves more than dogmatic negation.

The section as it stood at the time of the transfer made the question of fraudulent intent one of fact, and not of law, in all cases arising under the title of the code in which the section occurs, and this case arises under that title. It was incumbent upon defendant to allege and prove the fraudulent intent. Under the section before the amendment, this court has frequently held that a voluntary conveyance is not, *prima facie*, fraudulent, and a fraudulent intent is not to be arrived at as a presumption of law. (*Emmons* v. *Barton*, 109 Cal. 662.)

The section also originally provided that a transfer could not be adjudged fraudulent solely on the ground that it was not made for a valuable consideration.

In *Emmons* v. *Barton*, *supra*, the conveyance was a gift from husband to wife, and it was there held that such conveyance "is valid as against creditors, although the consideration was love and affection alone, unless it was made with intent to defraud creditors. . . . . But the intent is a question of fact, and must be averred and proved. A voluntary conveyance is not, *prima facie*, fraudulent, and a fraudulent intent is not to be arrived at as a presumption of law. Therefore, in a case like

the one at bar, there must be evidence upon which the jury or court can base a finding of *the fact* that the intent of the grantor at the time of the grant was to defraud his creditors. .... Pronounced insolvency at the time of the grant would no doubt be a strong circumstance tending to show fraudulent intent, and, in the absence of other controlling facts, it would be sufficient to justify a finding of such intent."

By the amended act a voluntary conveyance, or a conveyance without a valuable consideration, is declared to be fraudulent and void as to existing creditors if the grantor is insolvent at the time of the grant, or in contemplation of insolvency. The intent is no longer in such case a question of fact to be alleged and proved—indeed there need be no intent alleged or proved. The law declares the conveyance to be fraudulent and void, and produces the same result without proof of actual fraud being shown.

Under the former law insolvency was only a circumstance tending to show fraudulent intent; and while insolvency, if "pronounced at the time of the grant, would be a strong circumstance tending to show fraudulent intent," there might be "other controlling facts" which would relieve the act from any fraudulent intent, and, in such case, the grant would stand. But not so now. No other conceivable facts would control when the fact of insolvency is shown and the conveyance is voluntary, or without valuable consideration. Section 3439, Civil Code, under which this case arises, provides: "Every transfer of property .... made .... with intent to delay or defraud any creditor .... is void against all creditors of the debtor .... "; but section 3442 formerly said that this fraudulent intent is in all cases a question of fact and not of law. Now, however, the fraudulent intent in certain cases is a question of law and not of fact.

When Joseph A. Cook conveyed to his wife, the law said that the deed should not be adjudged fraudulent solely on the ground that it was not made for a valuable

consideration. There must be intent to defraud, and insolvency did not alone and of necessity establish that intent. As the law now is, a deed without valuable consideration by a party insolvent is, as to existing creditors, fraudulent and void.

Under the old law the plaintiff's deed might have been good and the title pass to her, and if so can that title be disturbed by any law subsequently passed, whether it be a new rule of evidence relating to a remedy, or some other form of law more directly rendering the title void? If plaintiff owned the land in 1891, whether she got it by gift or however else, can the legislature subsequently make a new rule of evidence in any case where her title may be drawn in question, that will have the effect to destroy the title with which she had been previously invested by law? It seems to me that the proposition of appellant has neither justice, reason, nor authority to support it.

Prior to April 1, 1878, the Code of Civil Procedure, section 325, laid down certain elements constituting adverse possession where claim of title is claimed, not founded on a written instrument, etc. On the day above named a new element was introduced by the legislature, to wit, that the claimant, his predecessors and grantors must have paid all the taxes levied and assessed upon the land. This court has frequently held that this new element of adverse possession had no retroactive effect and could in nowise affect a title that had ripened under the former law. (*Sharp* v. *Blankenship*, 59 Cal. 288, and cases there cited.) No part of the code is retroactive unless expressly so declared. (Code Civ. Proc., sec. 3.) The principle decided in *Sharp* v. *Blankenship*, *supra*, seems to me to be so closely analogous to the question here presented as to make it decisive and conclusive.

In view of the facts in this case, under the law in force when the conveyance was made, did title pass to plaintiff, beyond the reach of defendant, as a creditor

of the grantor? Was the transfer by said Cook made
with intent to defraud defendant?

Appellant's brief is constructed upon the theory that
the law of the case is found in section 3442 of the
Civil Code, as amended in 1895, and we therefore have
not the full benefit of counsel's views upon the case as
judged by the section before amended. He claims un-
der the amended section alone. I will endeavor, how-
ever, to meet every possible question presented by the
evidence.

It is urged that the deed was not delivered on the
day of its date as found by the court. The husband
testified that he delivered the deed to defendant on the
day of its date, June 1, 1891; she testified that she
thought it was not delivered until the following Septem-
ber or October. The trial court took the date of deliv-
ery given by the husband, and as there was no evidence
to dispute this fact except that of the wife, and she dif-
fering only as to the date, but not as to the fact of de-
livery, I think the finding should stand. Besides, the
delivery assumed as of date September or October, 1891,
would not change the result. The attachment was not
served until November 5, 1892.

The facts that may be urged by appellant as badges
of fraud are: 1. That the deed was not acknowledged
until November 17, 1892, nor recorded until November
26, 1892, twenty-one days after the writ of attachment
was levied. 2. That defendant was at the time an ex-
isting creditor of the grantor. 3. That the deed was
without valuable consideration. 4. That the grantor
was insolvent when he made the deed.

As to the acknowledgment and recordation of the
deed, there is no evidence as to whether said Joseph A.
Cook had been served with summons in the attachment
suit before the deed was acknowledged, nor is there any
evidence that he had been served with summons or
knew of the suit before the deed was recorded, nor that
the acknowledgment or recordation of the deed was the
result of the suit. While an inference might have been

otherwise drawn from the facts in evidence, we cannot say that the court erred in not drawing it. But there is no evidence tending to show that plaintiff had at any time prior to bringing the suit nor for long after, any knowledge whatever of the suit or the circumstances out of which it arose.

It does appear beyond dispute that defendant was a creditor of said Joseph A. Cook when the deed was made. This indebtedness had its origin in certain shares of the Artesian Land and Water Company, a corporation, owned by said Joseph A. Cook. Defendant was a creditor of the corporation, and sued it by foreclosure proceeding in 1888, and obtained judgment for a deficiency in 1890. It was upon the proportion of this liability due from said Cook as a stockholder upon which defendant afterward attached the land in question.

As to the consideration the deed reads: "The party of the first part, in consideration of the sum of one dollar and other consideration dollars ($1.00) [*sic*], to him in hand duly paid, has sold to party of the second part, her heirs," etc.

Both husband and wife testified that she paid him one dollar at the delivery of the deed. The wife also testified that her husband owned a certain house in Auburn, New York, the proceeds of which her husband had always said she should have, and that he had realized $5,000 out of this property and put in the California property (the subject of this litigation), and that when he got his title to the California property he would deed it to her. He testified that long before the date of the deed (June 1, 1891) he had told her he would convey the California property to her as soon as he got his title. The Auburn property stood in the name of the husband.

But if these facts could be held not to import a valuable consideration, the law declared that a transfer could not be adjudged fraudulent solely on the ground that it was not made for a valuable consideration. The

circumstances, therefore, relating to the consideration can only figure in determining whether they tended to show fraud.

At the time of the transfer, plaintiff knew nothing of the indebtedness of her husband existing in California; she did not know of the attachment until long after it was commenced, and after the deed was recorded and this suit was brought; no evidence points to her knowledge of her husband's insolvency or belief that he was insolvent, or of facts that would put a prudent person, having an interest, upon inquiry. So far as the evidence shows, she was an innocent grantee without notice of any legal infirmity in the title or in the grantor.

Whether the transfer was or was not without valuable consideration, as has been said, can only be regarded as *indicia* of fraud. It was held in *Ryan* v. *Tomlinson,* 39 Cal. 639, " that a verbal agreement for an exchange of real property, which has been carried into effect by the execution of proper conveyances in pursuance of the agreement, is not void under the statute of frauds."

In *Robins* v. *Hope,* 57 Cal. 493, it was said: "Where an adequate motive for making a deed is apparent, that circumstance [want of consideration] does not necessarily militate against the *bona fides* of the transaction." When the deed was made to plaintiff both the husband and wife understood that it was to carry out the previous agreement that plaintiff should become the owner of the California property, and I think that, under the circumstances, there was an adequate motive for making the deed. The husband, as we shall see later on, was in good circumstances financially, and there was nothing in their surroundings to suggest insolvency at that time, or danger of insolvency. And it was competent for plaintiff to show other consideration than that mentioned in the deed. (*Carty* v. *Connolly,* 91 Cal. 15.)

I can find no evidence of fraudulent intent on the part of grantor or grantee in the matter of consideration. But it is urged that the husband was insolvent when he conveyed to his wife, and that the conveyance

was voluntary and therefore void. Appellant's position is a *non sequitur* because it omits the essential additional element of fraudulent intent. Since the very elaborate consideration of this question by Mr. Justice Garoutte in *Bull* v. *Bray*, 89 Cal. 286 (many times since approved), there has been no doubt as to the law of this state, and it is that "in an action by a judgment creditor to set aside deeds of gift made by the judgment debtor to his wife as being void as against prior creditors, it is necessary specifically to find that the deeds were made with a fraudulent intent in order to sustain a judgment for the plaintiff, and such findings cannot be inferred from findings that the deeds were without consideration, and that the judgment debtor was insolvent when he made them, though without full knowledge of his actual financial condition, and that by the making of them he hindered, delayed, and defrauded the plaintiff in the collection of his debt."

In a concurring opinion Mr. Chief Justice Beatty said: "It does not seem possible to avoid the conclusion that the law of California on the subject of voluntary conveyances by insolvent debtors is such, as in the opinion of Justice Garoutte, it is declared to be. But I cannot refrain from expressing the belief that it is most unfortunate that the court should be forced to that conclusion. When an insolvent debtor makes a gift of his property to a donee of his own selection, there can be but one result so far as creditors are concerned; they are necessarily deprived of what is rightfully theirs, and the law ought to pronounce such a transaction *ipso facto* fraudulent and void as to them. . . . . It ought to be changed, but the legislature alone has the power to change it."

And the legislature did change it (probably as the outgrowth of this decision), but the defendant cannot avail himself, as we have seen, of the changed law.

2. But appellant says that the husband was insolvent, and in *Emmons* v. *Barton, supra,* Mr. Justice McFarland for the court, said: "Pronounced insolvency at the time

of the grant would, no doubt, be a strong circumstance tending to show fraudulent intent, and, in the absence of other controlling facts, it would be sufficient to justify a finding of such intent."

Was insolvency proved, and was it of such a pronounced character as to warrant the inference of fraudulent intent?

Appellant insists that the evidence shows that the said Cook was insolvent when he made the transfer to his wife. The evidence of Joseph A. Cook is uncontradicted, and tended to show that he owned property in the state of New York at the time of the transfer in question (June 1, 1891) of the value of $36,000 on which there was a mortgage lien of $3,000 and no more; that he continued the ownership until 1893, when the mortgage debt was paid and the property sold by said Cook to a company then formed, and the said Cook accepted stock in the company for his interest, valued at $30,000. A member of the company was to put in $25,000 and the property (salt works) was to be enlarged. Eight thousand dollars of the company bonds were sold, and $8,000 more used by a director of the company, without its knowledge, as security for the loan of $6,000 he had made of a friend, making $14,000 of bonded debt. These bonds were secured by a deed of trust or mortgage on all the corporate property. The mortgage or deed of trust was subsequently foreclosed for this bonded debt, and all the property sold under foreclosure, and the said Cook thus lost all his interest in the property. This took place, as testified to by said Cook, sometime in 1894. The trial court evidently regarded this as sufficient to show that the said Cook was not insolvent in 1891 when he made the transfer to plaintiff, and we cannot say that the court erred in this conclusion. But it was urged by appellant at the trial, and is urged here, that the ownership of property in New York state at the time of the transfer, or the solvency of the grantor in New York at that time, is not to be considered if, with respect to his prop-

erty in the state of California, and his indebtedness in the latter state at the time of the transfer, he was not solvent. The said Cook is not shown to have had any property in this state at the time of his indebtedness to defendant, other than his interest in the property mentioned in the complaint, and the value of this interest nowhere appears. It was bid in at the sale for the debt. The question is presented whether a person residing in another state, and being indebted in this state to an amount equal to, or in excess of, the value of his property owned in this state, but who has ample property in the state of his residence to meet all his obligations, must be regarded as insolvent, and that a voluntary transfer of his property in this state, or a transfer without a valuable consideration, is fraudulent and void as to creditors at the time of the transfer.

When is a person insolvent under our law? The act of 1880 in force when the transfer in question was made does not define what shall constitute insolvency.

In *Washburn* v. *Huntington*, 78 Cal. 573, this court said that it saw no reason why the definition of insolvency, as given in section 3450 of the Civil Code, is not correct under the act of 1880. The section reads: "A debtor is insolvent within the meaning of this title [the title is—Assignments for the Benefit of Creditors] when he is unable to pay his debts from his own means, as they become due.

There is no suggestion here that the "means" from which the debts are to be paid must exist in this state. In the case of *Sacry* v. *Lobree*, 84 Cal. 41, the definition of insolvency was very fully given—perhaps more fully than elsewhere to be found in our reports, but it did not involve the question here.

In *Thompson* v. *Paige*, 16 Cal. 77, it was held that an instruction "That a man who is insolvent for the want of means to pay his debts in this state is, in law, insolvent, without reference to any property in another state" —was too broadly stated. The question is too import-

ant a one to decide in a case where it is not necessarily involved.

In the case here insolvency is only an evidence of fraud, and while it might in some cases be conclusive, if property elsewhere than in this state must be excluded, I do not think it so in this case in any view. The evidence shows the financial condition of the husband when he made the deed, and has already been referred to. There is no evidence tending to show that, in 1891, either the husband or wife had any doubt of his solvency; there is nothing to show that the deed was made because of any financial embarrassment of the husband, present or prospective. At that time the liability of the husband to defendant had been ascertained, but there is no evidence that the husband knew of its existence. The attachment suit was brought against the husband sixteen months after the deed was made, and while the husband was operating his salt works in New York.

3. It is claimed that the husband made certain statements to defendant in 1893, tending to show that the deed was made to avoid the attachment or defraud defendant. The statements are denied by the husband as a witness, but, even if he made them, I do not think he could be heard to impeach his title made two years before; and, to receive such statement as importing verity and resulting in the overthrow of plaintiff's title, there should be no doubt left in the mind of the court that they truly reflected the situation when the deed was made.

The court below found no evidence of fraud in the transaction; and, if the court erred in holding that the said Cook was not insolvent, I do not think that the technical insolvency shown, on the theory of insolvency advanced by appellant, was such as to evidence fraud.

My conclusion, therefore, is that there was no reversible error in the interlocutory decree, and it is recommended that the cause be remanded with directions to

proceed to partition the property in accordance with the findings and judgment of the court below.

BELCHER, C., and SEARLS, C., concurred.

For the reasons given in the foregoing opinion the order appealed from is affirmed, with directions to proceed to partition the property in accordance with the findings and judgment.

McFARLAND, J., TEMPLE, J., HENSHAW, J.

Hearing in Bank denied.