## ROBERTS v. BURR.

### L. A. No. 435; October 7, 1898.

#### 54 Pac. 849.

**Sale—Intent to Defraud Creditors.**—Civil Code, section 3442, makes a question of fraudulent intent one of fact. Act of 1895 makes a voluntary transfer without consideration by one insolvent, or in contemplation of insolvency, fraudulent as to creditors. Held, that the rule under section 3442 of the Civil Code was not changed by act of 1895, except in transfers of the kind specially mentioned in the act.

**Sale—Change of Possession.**—A Firm Composed of Father and Son sold to the wife and mother jewelry, which was delivered to her and kept for three months in her house, where she resided with her husband and son, except when she intrusted a part of it to them to sell to obtain necessaries for the family, they returning it on failing to find a purchaser. Held, that there was an actual and continued change of possession, as against creditors.[1]

**Sale—Change of Possession.**—A Mother Purchased Jewelry from a firm composed of her son and another, and, after keeping the property three months, delivered it to plaintiff, to be sold on commission. Held, that the employment of the son by plaintiff to assist him in his business, under a contract to which the mother was not a party, did not indicate that there had been no actual and continued change of possession in the mother, as against creditors.

**Sale—Fraud on Creditors.**—A Firm Sold Its Stock to a Creditor, after which plaintiff purchased it from him, and published a newspaper notice stating that a member of the firm was his manager. Held, that as against firm creditors, who attached property of plaintiff as

---

[1] Cited in note in Ann. Cas. 1912A., 608, on retention of vendor in employ of vendee as affecting change of possession.

Cited in Roberts v. Burr, 135 Cal. 157, 67 Pac. 46, as part of the history of the case. In the interval between the two hearings the plaintiff had amended, setting up actual fraud.

belonging to the firm, the notice was admissible to show the partner's connection with plaintiff's business.

**Sale—Fraud on Creditors—Evidence.—**As Against One Claiming Goods under a purchase from an insolvent firm, a statement of the firm to a mercantile agency long before the sale is not admissible in behalf of attaching creditors, if no actual fraud is alleged, and the only question is whether there was an actual and continued change of possession in the purchaser.

APPEAL from Superior Court, Los Angeles County.

Action by James H. Roberts against John Burr. From a judgment for defendant and an order denying a new trial plaintiff appeals. Reversed.

Jones & Newby for appellant; L. H. Valentine for respondent.

CHIPMAN, C.—Action to recover possession or the value of certain jewelry, precious and semi-precious stones, as bailee of the owner. Defendant justifies as sheriff under an attachment. Defendant had judgment, from which, and from the order denying motion for a new trial, plaintiff appeals. The trial was by the court without a jury.

S. E. Lucas & Son (composed of S. E. Lucas and James H. Lucas) were in the jewelry business at Los Angeles. Emily A. Lucas was wife to S. E., and mother of James H. She had' made large advances of money to the firm out of her separate estate, and the firm owed her on August 2, 1895, nearly $6,000. On that day the firm conveyed by written bill of sale and delivered to her the possession of certain of their goods, the subject of this action, of the value of $5,025. November 14th and 16th Mrs. Lucas delivered the goods to plaintiff, to be sold on commission. On January 7, 1896, one Trafton, a creditor of the firm, commenced an action against the firm by attachment, and caused the goods to be seized. Subsequently he obtained judgment, and the property was sold under execution, Trafton becoming the purchaser for the amount of his judgment and costs, about $700. The court found "that the execution of the bill of sale was not accompanied by an immediate delivery, . . . . and was not followed by an actual and continued change of possession, . . . . and no actual and continued change of possession . . . . had occurred at the time of the levy of the attachment."

The court also found that plaintiff at the commencement of the action "was not the owner nor in the possession of, nor entitled to the possession of, the stock of jewelry . . . . described in the complaint, as against an attaching creditor of the said S. E. and James H. Lucas," and "that the said bill of sale . . . . is fraudulent and void against the creditors of the said S. E. and James H. Lucas."

Appellant challenges the sufficiency of the evidence to justify the decision. The sole question contested arises out of the finding that there was no immediate delivery followed by an actual and continued change of possession, as required by section 3440 of the Civil Code. It appears from the evidence, and is not contradicted, that Lucas & Son were indebted to Mrs. Lucas as already stated, and that on her demand for payment they sold and delivered to her the goods in question. S. E. Lucas took the package to her, and delivered it and the bill of sale to her, and received certain notes, aggregating over $5,000, in payment. There is no substantial conflict as to the following facts: Mrs. Lucas at the time resided with her husband and son in a house belonging to her. She placed the package containing the articles when delivered to her in a private satchel, and put the satchel in her bedroom closet, to which her husband had access. In October she delivered some of the articles to her husband and some to her son, to be sold to obtain necessaries for the family; but, finding no purchaser, the articles were returned to her and replaced in the satchel, which she kept under lock and key. With this exception, neither the husband nor the son had possession or control of the property at any time. Lucas & Son continued in business until September 2d, when they sold out to Lyons & Son, creditors, and the latter went into exclusive possession. No question is raised as to the bona fides of this sale. On November 13th, plaintiff took a lease of the premises, and purchased the fixtures and fittings of Lyons & Son, and the latter surrendered the premises to plaintiff. He went into business, and advertised himself as dealer in precious stones, and placed his name on the window. He received goods on sale from several persons. On November 14th and 16th, Mrs. Lucas personally delivered to him the articles she had purchased from Lucas & Son, to be by him sold upon commission. He receipted to her for the goods. He took James Lucas into the

store as manager, and agreed to share with him the profits of a certain part of the businesss and of the commissions, and James had the management in running the store. He reported sales to plaintiff from time to time, and they had settlements as to their share of the profits and commissions. James made return to Mrs. Lucas of sales of her goods made by plaintiff, paying over to her in all between three and four hundred dollars. Lucas, Sr., was at the store frequently, but took no part in its management. Both he and the son had advised the arrangement between Mrs. Lucas and plaintiff, and were present at the store when she brought the articles and delivered them to plaintiff; and James wrote the receipt, which plaintiff signed and gave to her. Plaintiff continued in charge and control of the business, James being the active manager; and on January 7, 1896, the attachment was served, and Mrs. Lucas' property was taken by the defendant sheriff. There is considerable evidence in the record, not summarized, tending more or less to bear upon the good faith of the sale, which might have some significance if actual fraud were alleged, but which, in our opinion, does not throw any light upon the issues, for the reason that there is no question of actual fraud presented by the pleadings or by the findings. Respondent cites Cook v. Cockins, 117 Cal. 140, 48 Pac. 1025, to the point that under section 3442 of the Civil Code, as amended in 1895, the question of fraudulent intent in cases arising under section 3440 of the Civil Code, is one of law, and not of fact, and that it was incumbent upon plaintiff to show the good faith of the transfer to Mrs. Lucas, as well as that it was accompanied by immediate delivery and followed by actual and continued change of possession. The provisions of section 3442 are unchanged by the act of 1895, except where the transfer is voluntary, or without a valuable consideration, by a party while insolvent or in contemplation of insolvency, in which case the transfer "shall be fraudulent and void as to existing creditors." With this exception, there is no change in the rule that fraudulent intent is a question of fact, and not of law, and when actual fraud is relied upon it must be alleged and proved: See cases cited in Cook v. Cockins, supra; Wetherly v. Straus, 93 Cal. 283, 28 Pac. 1045.

We think the fact that Mrs. Lucas claims by purchase from her husband and son cannot, of itself, in any way affect her

rights any more than if the purchase had been from a stranger. Nor do we see that an immediate delivery followed by an actual and continued change of possession of the goods could not and did not take place because it was under the same roof where all the parties resided. This court sustained a sale of hay by a husband to his wife, as against creditors of the husband, which was not moved from the corral where it was stacked on the homestead premises of the husband and wife, and where the wife was feeding it to her stock: Porter v. Bucher, 98 Cal. 454, 33 Pac. 335. The trial court took the case from the jury because in its opinion there could have been no change of possession such as the statute required. In speaking of this, it was said here: "If the ruling of the court below correctly stated the law, it would logically follow that, in order to make a valid purchase of hay from her husband, she must immediately remove the hay from the homestead, or buy it from day to day as she fed it to her cattle," and this the court held she was not called upon to do. We have seen that the wife may purchase personal property from her husband, the same as from a stranger. A rule, therefore, that would preclude her taking and holding the possession in the home of both, in the case of a purchase from the husband, would preclude the purchase of personal property from a stranger, and bringing it to her home, and continuing her possession under the same roof with her husband. But such a rule would practically deny the right altogether. There can be no doubt but that the wife may take and hold possession, notwithstanding her husband and son live in the same house: Bump, Fraud. Conv., sec. 132; Ludlow v. Hurd, 19 Johns. (N. Y.) 218; Wilson v. Lott, 5 Fla. 324; Porter v. Bucher, supra. What is meant by "continued change of possession" has been the subject of much comment, and has never yet been, and never can be, reduced to any fixed and certain rule. What would be regarded as in law continued possession under one state of circumstances would not be under other conditions of fact. It was said in Stevens v. Irwin, 15 Cal. 503, 76 Am. Dec. 500, so often quoted: "The word 'continued' was designed to exclude the idea of a mere temporary change; but it never was the design of the statute to give such extension of meaning to the phrase 'continued change of possession' as to require, upon penalty of the forfeiture of the goods, that the

vendor should never have any control over or use of them. This construction, if made without exception, would lead to very unjust and very absurd results.'' In the case at bar the possession was taken August 2d, and retained, with a single temporary interruption in October, until November 14th—over three months—and was then parted with, not to the vendors, but to a bailee of the vendee for sale. In October a portion of the goods was delivered to the vendors to sell, to obtain family necessities, but was returned to the vendee at once, no sale having been made. With this exception, the vendors never had possession after the sale. Many of the cases speak of an open and notorious possession, but the statute does not require a publication of ownership in all cases. ''While our statute makes the want of an immediate delivery and continued change of possession conclusive evidence of fraud, it introduces no new rule as to what acts shall constitute delivery and change of possession'': Godchaux v. Mulford, 26 Cal. 316, 85 Am. Dec. 178. The visible, open and notorious delivery and possession spoken of in the cases refer generally to sales of the entire business, or of some bulky object of property. Acts of secrecy or concealment would go far toward showing actual fraud, but the fact that Mrs. Lucas did not inform her husband's creditors of the purchase does not change her position. Her husband had a right to prefer her as a creditor, except as the transaction was open to attack under the insolvent law or for actual fraud. We cannot regard the temporary parting with possession to the husband and son of some of the goods, under the circumstances disclosed, as inconsistent with an immediate and actual and continued change of possession. Under our law, the husband and wife are not one person in the sense that the possession of one is the possession of the other, or concurrent possession.

There is no conflict in the facts. The property was delivered to plaintiff, who was engaged in selling other similar property. The contract was between him and Mrs. Lucas. She had no understanding with her son James about it. No doubt, she felt greater confidence in parting with the property to plaintiff, knowing that her son would be employed to assist in the sale of the goods, but we cannot say from the fact that the son was employed by plaintiff that her three months' previous possession cannot be regarded as con-

tinued possession, under the statute. Lucas & Son continued in business after August 2d until in September, when they sold out entirely to Lyons & Son, and gave up the store, and had no connection whatever with it. Lyons & Son continued until November 14th, when they sold out their fixtures and fittings to plaintiff; and he went into exclusive possession of the leasehold interest, and of the goods he put in. Both Lyons & Son and plaintiff published the change of proprietors in the usual way. The attaching creditor, Trafton, knew of these changes. We can see nothing in the statements made to him by Lucas, and in Lucas' failure to tell him of the sale to his wife, that should prejudice her rights, or as in the least bearing upon the question of change of possession or continued possession. The vendee knew nothing of these representations, and the vendors could not impeach her title by any such representations after sale to her. We think the employment of James Lucas by plaintiff did not in any just sense, under the facts in the case, indicate that there was not an actual and immediate and a continued change of possession of the goods from Lucas & Son to Mrs. Lucas. There is not the slightest evidence that he was there as a representative of the firm of Lucas & Son, and it is only because he was once a member of the firm that any such inference could be drawn.

2. Plaintiff offered in evidence an advertisement he had caused to be published in the "Los Angeles Times" on November 17th, announcing that he had purchased the jewelry business owned by S. Lyons & Son, "and will carry a fine stock of diamonds and opals; and J. H. Lucas, formerly of Lucas & Son, is now manager there." Plaintiff claims that it was relevant, as tending to show that the public was warned of the position occupied by James H. Lucas. Similar oral evidence was admitted to show Lucas' connection with the business, and we can see no reason why this public notice was not admissible.

3. The evidence offered by defendant, and objected to by plaintiff, of the report made to R. G. Dun & Co. in 1894 by Lucas & Son, was not admissible under any issue in the case. Actual fraud was not alleged. This evidence did not, as we can see, cast the faintest light upon the question of immediate and actual and continued change of possession of the goods sold long after the reports were made. Upon the essential

facts in the case there is no substantial conflict, and hence the question as to whether there was such change of possession as satisfies the statute becomes one of law, and may be here reviewed: Bell v. McClellan, 67 Cal. 283, 7 Pac. 699; Claudius v. Aguirre, 89 Cal. 501, 26 Pac. 1077. The judgment and order should be reversed.

We concur: Belcher, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are reversed.