[L. A. No. 1158. Department Two.—October 16, 1903.]

## L. D. C. GRAY, Trustee in Bankruptcy, etc., Respondent, v. ROSA BRUNOLD et al., Appellants.

INSOLVENCY—FRAUDULENT TRANSFER—GIFT BY INSOLVENT—INVALIDITY AGAINST CREDITORS—INTENTION TO DEFRAUD NOT REQUIRED.—Under section 3442 of the Civil Code as amended in 1895, a voluntary transfer without valuable consideration, by one who is insolvent, or who acts in contemplation of insolvency, is void as against existing creditors, and it is not required that an intent to defraud such creditors should be shown.

ID.—ACTION BY TRUSTEE IN BANKRUPTCY—PLEADING.—In an action by a trustee in bankruptcy to recover against the donee of the bankrupt, the complaint need not aver an intent of the bankrupt to defraud his creditors; nor need it state facts constituting insolvency under the Bankrupt Act. It is sufficient to allege that the bankrupt was insolvent; and the allegation that the transfer was for the purpose of preventing the creditors from collecting any indebtedness due them by the bankrupt, may be regarded as equivalent to an allegation that it was with intent to hinder or delay his creditors.

ID.—BANKRUPTCY OF PARTNERSHIP—CONSENT TO ADJUDICATION—COLLATERAL ATTACK.—The adjudication by the federal court of the bankruptcy of a partnership, made upon the admission and consent of the partners, each of whom was adjudged a bankrupt, cannot be collaterally attacked, in an action by the trustee in bankruptcy to recover a gift made to his wife by one of the partners.

ID.—GIFT TO WIFE—PAYMENT UPON MORTGAGE UPON HOMESTEAD.—Where a portion of the money given by one of the bankrupt partners to his wife was applied toward the payment of a mortgage upon his homestead, no fraud results from such payment, and the trustee in bankruptcy cannot enforce a lien upon the homestead for the amount so applied.

ID.—PREFERENCE OF CREDITOR—JOINT NOTE OF HUSBAND AND WIFE— LIABILITY OF TRANSFERER—DEBTOR NOT LIABLE—LIABILITY OF

WIFE.—Where a portion of the money given by a bankrupt debtor to his wife was applied toward the payment of a joint note signed by the husband and wife, such payment becomes a preference of one of the creditors of the bankrupt, for which an action lies against the creditor preferred but not against the bankrupt. The wife, being liable as having received the money without consideration from her insolvent husband, and having paid it over to the creditor who is not a party to the action, is liable to judgment for the amount so received and paid over.

ID.—INDIVIDUAL CREDITORS OF PARTNER—FIRM DEBTS.—An insolvent partner who makes a preference out of his interest in the firm assets, cannot limit consideration to his individual creditors, in respect of such preference. Each partner is liable *in solido* for all the firm debts, and they must be so considered.

ID.—MONEY USED FOR LIVING EXPENSES.—Though money to be used for living expenses is not exempt, yet where it has been actually used in the purchase of provisions and necessaries of life for the period of three months, which are not unreasonable in amount, the money so paid cannot be recovered by the trustee in bankruptcy.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion.

J. C. Brown, for Appellants.

Lawler & Allen, for Respondent.

CHIPMAN, C.—Action to have declared invalid and void a certain transfer of property by defendant A. Brunold to defendant Rosa Brunold, his wife; for judgment against the said Rosa for the sum of $1,600; and to have a lien declared on a certain lot in the city of Los Angeles to secure the sum of $950, part of said sum of $1,600. The court gave judgment against defendants for the sum of $1,600, and that the plaintiff holds a lien on said lot to secure the payment of $900 thereof, and authorized plaintiff to take all necessary steps to foreclose said lien. Defendants appeal from the judgment and from the order denying their motion for a new trial on a statement of the case.

The court found the following facts: That on March 23, 1900, the Dairymen's Co-operative Distributing Association

(of which defendant A. Brunold was a member with three
other persons), and each of its members, was adjudged to be
bankrupt, and on May 22, 1900, plaintiff was duly appointed
and now is, referee in bankruptcy of the estates of said bank-
rupts; that on July 12, 1899, and prior thereto, defendant
A. Brunold was the owner of lot 55 of a certain tract of said
city, and on that day duly declared and recorded a homestead
on said premises; on January 20, 1900, and since March 14,
1898, said premises were subject to the lien of a mortgage given
to the German-American Savings Bank, to secure two promis-
sory notes, aggregating $1,350, executed by both defendants;
on October 1, 1899, and up to January 20, 1900, defendant
A. Brunold was the owner and holder of four promissory notes
executed on October 1, 1899, in favor of said A. Brunold, by
one Baralini and one Scuffi, aggregating $2,100, secured by a
chattel mortgage, and on January 20, 1900, they paid to said
A. Brunold, on account of said indebtedness, the sum of
$1,600; that immediately on receiving said sum, and within
four months prior to the filing of the creditors' petition in
bankruptcy, he transferred in bad faith, and made a pre-
tended gift of, said sum to his wife, the said defendant Rosa;
that on October 27, 1899, defendant A. Brunold was, and ever
since has been, and was on said twentieth day of January,
insolvent, and that said transfer was made to hinder, delay,
and defraud creditors of the said A. Brunold; that shortly
after the fraudulent transfer of said $1,600, the said Rosa paid
to said bank $900 of said money, to be applied in part satis-
faction of the said mortgage note held by the said bank, and it
was so applied; about the same time the said Rosa also paid
of said $1,600 to one Salzgaber $524, in discharge of a prom-
issory note held by him, and on which defendants were sev-
erally liable, and the balance of said $1,600—to wit, $176—
was used in the purchase of necessaries of life; that on July
12, 1899, said A. Brunold held and owned certain promissory .
notes made by one Scaramelli and one Mistress for $3,100,
secured by chattel mortgage, and on that day he pretended
to execute an assignment of said mortgage and indebtedness
to said defendant Rosa, but said assignment of said mortgage
was not made in good faith, nor for a valuable or any consid-
eration, and said Rosa never at any time assumed any control

over said mortgage nor of said notes, "but, on the contrary, the said A. Brunold continued to deal with, control, and collect and appropriate to his own use and purposes payment of the principal and interest, on account of said indebtedness, in the same manner subsequent to said pretended assignment, as he had and did prior thereto''; on October 1, 1899, said Scaramelli and Mistress transferred the property mentioned in their said chattel mortgage to the said Baralini and Scuffi, and said mortgage was satisfied of record, and Baralini and Scuffi assumed the payment of the balance due A. Brunold on said Scaramelli and Mistress's notes,—to wit, the sum of $2,100,—and executed to A. Brunold their certain promissory notes for such balance secured by chattel mortgage, and said A. Brunold continued thereafter, and up to January 20, 1900, to be the owner and holder of said notes and mortgage; that on January 20th, there was due and unpaid from Baralini and Scuffi on said notes $1,600, and on that day they paid the same to said A. Brunold; that said Rosa did not on July 12, 1899, or at any time, own said Scaramelli and Mistress's notes and mortgage (assigned to her by her husband, as previously found), nor was she the owner of any money due or to become due thereon, but at all times said A. Brunold was the owner thereof in his own right of all moneys due on account thereof; that said A. Brunold did not collect from said Baralini and Scuffi the amounts due on said notes and mortgage on account of and at the instance and for the use and benefit of said Rosa, but on his own account and his own separate use.

As conclusions of law, the court found: That said sum of $1,600 is part of the estate of said A. Brunold, and plaintiff is entitled to recover from defendants said sum; that plaintiff is entitled as said trustee in bankruptcy to follow the said sum of $900 of said $1,600 paid by said Rosa to said bank, as shown in the findings, and is entitled to have a lien declared upon said lot as security for the payment of said sum of $900.

1. There was a general demurrer to the complaint which appellants claim should have been sustained, for the alleged reason that there is no allegation that the association or the defendant A. Brunold had any creditors at the times alleged in the complaint, nor is there any allegation that the alleged

transfer of the $1,600 by defendant A. Brunold to his wife, Rosa, was done with intent to defraud the creditors of the association or of said A. Brunold. The complaint alleges that since July, 1899, Brunold has been at all times insolvent; that the said transfer of $1,600 to his wife "was without consideration, and was fraudulent and void, and was made and done in violation and fraud of the rights of creditors of said A. Brunold, and for the purpose of preventing said creditors from collecting any indebtedness due them by said A. Brunold." An indebtedness of $1,350 to the savings bank was shown by the complaint to exist at that time. It was also alleged that this transfer was made within four months prior to his having been adjudged a bankrupt. We think, as against a general demurrer, the allegations are sufficient to charge insolvency at the time of the transfer, and, inferentially at least, the complaint alleges the existence of creditors besides the savings bank. Section 3442 of the Civil Code, as amended in 1895, no longer requires an allegation of intent to defraud. A voluntary transfer by a person, without valuable consideration, while insolvent or in contemplation of insolvency, is declared to be void as against existing creditors. (*Cook* v. *Cockins,* 117 Cal. 148.) It was sufficient to allege that Brunold was insolvent, without alleging the probative facts constituting insolvency under the Bankrupt Act; and the allegation that the transfer "was for the purpose of preventing said creditors from collecting any indebtedness due them by Brunold," while not in the language of the act, may be regarded as equivalent to an allegation that it was with intent to "hinder or delay his creditors."

2. The motion for nonsuit was urged on the ground that it had not been shown that A. Brunold was insolvent at any of the times alleged in the complaint, and also on the further ground that it was not shown that the transfer of property to his wife was made with intent to defraud, hinder, or delay his creditors. It appeared that in the United States district court the partnership, as well as each of its members, had been adjudged bankrupt, and this adjudication was based upon the written consent of all the parties that "said partnership is now, and ever since October 27, 1899, has been, unable to pay its debts in full, and consents to an immediate

adjudication in bankruptcy against said partnership." It
has been held that as each partner is liable *in solido* for all
the firm debts, a partnership cannot be insolvent unless each
of its members is also insolvent. (*In re Blair,* 99 Fed. 76;
*Vaccaro* v. *Security Bank,* 103 Fed. 436. See, also, secs. 5
(*e*) and (*h*) of the Bankruptcy Act of 1899, 30 Stats. 547,
548—U. S. Comp. Stats. 1901, p. 3424.) The adjudication of
the federal court, made upon the admission of the partners,
cannot, we think, be attacked collaterally in this action. In
the course of the trial the evidence developed the fact that
Brunold's property consisted of his interest in the partner-
ship, and that as a bankrupt he filed a schedule in bankruptcy
which was apparently an individual schedule.

Upon the point that there was no evidence that the trans-
fer to his wife was with intent to delay or defraud his credi-
tors, what has already been said upon the demurrer applies.
It was not necessary to prove the intent, as the gift while the
donor was insolvent brought the transaction within section
3442 of the Civil Code. The motion for nonsuit was, we
think, rightly denied.

3. There is evidence sufficient to support the finding that
the notes of Scaramelli and Mistress, claimed to have been
assigned to Mrs. Brunold, July 12, 1899, subsequently taken
up and renewed for $2,100 by the notes of Baralini and
Scuffi, payable to, and the balance of $1,600 finally, on Janu-
ary 20, 1900, paid to, A. Brunold, belonged to him, as did
also these latter notes, and that none of them were ever the
property of his wife. But if this be conceded, still appellants
claim that from Brunold's gift of this $1,600 to his wife, no
fraud in fact resulted, since it appears that she paid with
this money the obligations which Brunhold himself could
have paid with it.

The validity of the homestead is not questioned. That
Brunold had the right to relieve his homestead from the lien
resting upon it, even though he was at the time insolvent,
we have no doubt. The Bankrupt Act of 1899, chapter 3,
section 6 (*a*), (30 Stats. 548,—U. S. Comp. Stats. 1901, p.
3424,) provides that the act "shall not affect the allowance
to bankrupts of the exemptions which are prescribed by the
state laws in force at the time of filing of the petition wherein

they have had their domicile," etc. It was held in *Steele v. Buel,* 104 Fed. 968, that "this section establishes the rule of exemption in the most absolute and unqualified terms, and that rule is the state law. . . . This rule of exemption, therefore, pervades the whole act, and is to be read into every other section and provision of the act." When Congress chooses to add to its own list of exemptions further exemptions under the state laws, it refers the federal courts in their action thereupon to the state laws. "A statute consists not merely of its terms, but of the judicial expositions thereof. If a law of the state has been construed by the highest court of the state, the federal courts are bound by that construction." (*In re Wiley,* 5 L. T. D. 330. To same effect, see, also, *First National Bank* v. *Glass,* 79 Fed. 706.) Exemption of the homestead is a constitutional right (Const. Cal., art. XVII, sec. 1), and the mode of its protection is with the legislature. (*Lee* v. *Murphy,* 119 Cal. 364.) In the case of *Simonson* v. *Burr,* 121 Cal. 582, the court adopted what was said in *Fitzell* v. *Leaky,* 72 Cal. 477, namely: "The homestead is exempt from forced sale, except as provided in the Civil Code (sec. 1240). The very purpose of the Homestead Law is to give to one—except as against an indebtedness already merged in a judgment, and as against a judgment of a peculiar character subsequently entered—the right to preserve and protect a homestead from forced sale. It has never been held that a homestead was invalid because the declarant was in debt, or declared the homestead to protect it from existing debts. It is not invalid because made during the progress of litigation which subsequently results in an ordinary money judgment against the homesteader. . . . The doctrine bearing upon conveyances made to hinder, delay, or defraud creditors has no application to the creation of a homestead." (See, also, *Beaton* v. *Reid,* 111 Cal. 484.) That a payment made to relieve the homestead from an encumbrance is sustained as against creditors was held in *Randall* v. *Buffington,* 10 Cal. 491. It was held *In re Hinkel,* Fed. Cas. No. 6,362; 2 Saw. 305, under the Bankrupt Act of 1867, that a person indebted, or even insolvent, may apply his property to the acquisition of a homestead, or the discharge of encumbrances thereon, without depriving it of the ex-

emption from forced sale by law. (See, also, to same effect, *Kelly* v. *Sparks*, 54 Fed. 70 (Kan.), where many cases are cited in support of the doctrine.)

The payment to Salzgaber may be regarded as a preference, and yet not be in fraud of creditors, unless prohibited by the Bankrupt Act or by state law. Section 60 of chapter 6 of the Bankrupt Act of 1898 (30 Stats. 562,—U. S. Comp. Stats. 1901, 3445) provides as follows: "A person shall be deemed to have given a preference if, being insolvent, he . . . has made a transfer of any of his property, and the effect of the enforcement of such . . . transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class." (Chap. 1, sec. 1 (25).) " 'Transfer, shall include the sale and every other and different mode of disposing of or parting with property, or the possession of property absolutely or contingently, as a payment, . . . gift, or security." After defining what shall constitute a preference, chapter 6, section 60 (*b*), then provides that: If a bankrupt shall have given "preference within four months before the filing of a petition, . . . and the person receiving it, or to be benefited thereby, . . . shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trusteee, and he may recover the property or its value from such person." The act gives a remedy against the person receiving the preference or transfer, but no authority is given for the action against the person giving the preference. The act seems to contemplate only the following of the property into the hands of the transferee or preferred creditor. No actual fraud is here shown, and, as the debtor's money has gone to discharge the claim of a creditor, no reason is perceivable why the debtor should be made to pay the trustee in bankruptcy also, and the complaint does not ask for a judgment against A. Brunold. But the transfer, however, was not directly to the debtor's creditor, but was made through the debtor's wife, who was severally indebted with her husband on the note of this creditor, and she obtained a direct benefit from the payment. Whether the money could be recovered from Salzgaber need not be considered, for he is not a party to the action.

Appellants claim that there is no evidence that Brunold owed any debts other than to Salzgaber and the bank, and hence there were no other creditors of their class to be affected by this preference. But there were creditors of the bankrupt association, and after the application of the association assets its creditors could look to the surplus of the assets of the individual members of the partnership. (Chap. III, sec. 5 (*f*) *Id.*)

Section 66 (*e*) provides, among other things, that "all . . . transfers . . . made by a debtor at any time within four months prior to the filing of the petition against him, and while insolvent, which are held null and void as against creditors of such debtor by the laws of the state . . . in which such property is situate, shall be deemed null and void under this act against the creditors of such debtor if he be adjudged a bankrupt, and such property shall pass to the assignee and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt." Under section 3442 of the Civil Code the transfer to Mrs. Brunold having been "made or given voluntarily, or without a valuable consideration, by a party while insolvent," etc., is declared to "be fraudulent and void as to existing creditors." If she still had the property in possession, it could be recovered; but as she paid the money in discharge of a note on which she was severally liable with her husband, judgment may go against her. If, as appellants claim, she was only surety for her husband on the Salzgaber note, and she should pay the judgment rendered against her, she may have a claim against her husband's estate. But there is no evidence that she was such surety; the finding of the court is, that she was severally liable, and we cannot consider her rights in this action on the theory of her being surety.

As to the balance of the money ($176), the finding is, that it was used "in the purchase of provisions and necessaries of life." Section 690 of the Code of Civil Procedure exempts from execution . . . "provisions actually provided for individual or family use, sufficient for three months," etc.

Mrs. Brunold testified as to this balance as follows: "The balance of the money we used for living expenses." This is the evidence on which the finding is based. Our statute does

not exempt money with which to purchase "provisions . . . for family use sufficient for three months." But we think that where the money has been used in good faith for that purpose before the parties are called upon to account for it, and the amount is no more than would reasonably be required to support the family for three months, the trustee in bankruptcy ought not to be allowed to recover it. Brunold was not adjudged a bankrupt until after this money had presumably been used in the purchase of family supplies. The amount here ($176) was not an unreasonable amount to support the family for three months.

There are no other errors assigned which seem to call for notice. Our conclusion is, that no judgment should be entered against defendant A. Brunold; that the payment to relieve the homestead was authorized; that the use of the money to purchase necessaries of life was also authorized, but that the payment to Salzgaber was unauthorized.

It is advised that the trial court be directed to enter judgment in accordance with this opinion, the costs of the appeal to be paid by plaintiff.

Cooper, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the trial court is directed to enter judgment in accordance with this opinion, the costs of the appeal to be paid by plaintiff.

Lorigan, J., McFarland, J., Henshaw, J.