[Civ. No. 1966. Third Appellate District.—May 6, 1919.]

# D. S. DENEHY, Respondent, v. JOHN STEWART et al., Appellants.

[1] FRAUD — INTENT — PLEADING — CONSTRUCTIVE FRAUD.—In a case where constructive fraud is relied on, it is necessary to allege the fraudulent intent, under section 3442 of the Civil Code. It is only by reason of the proviso in that section that fraud becomes established constructively or as a matter of law.

[2] FRAUD UPON CREDITORS — VOID TRANSFERS — INTENT — PRESUMPTIONS—CONSIDERATION.—While the transfer of property with intent to delay or defraud creditors is declared by section 3439 of the Civil Code to be void as to creditors, the intent in such a case is a question of fact and is not to be presumed from the mere fact of the transfer. It is only where the transfer is made or given voluntarily, or without a valuable consideration, by a party while insolvent or in contemplation of insolvency, that the statute declares such transfer to be fraudulent and void as to existing creditors.

[3] ID. — CONSIDERATION — ADEQUACY — GOOD FAITH.—A valuable consideration is such as money or the like and the adequacy or inadequacy of the amount, or its disproportion to the actual value of the property, does not affect the kind of consideration. The adequacy of the consideration is an element of the good faith of the transaction, and has no bearing upon whether the consideration is a valuable or good one.

[4] ID.—FRAUDULENT INTENT—EVIDENCE—BURDEN OF PROOF.—Where a transfer of property is supported by a valuable consideration, the burden of showing that it was made with fraudulent intent is upon the plaintiff.

---

2. Presumption that voluntary conveyance is in fraud of creditors, note, 119 Am. St. Rep. 557.

[5] ID.—RIGHT TO PREFER CREDITORS—KNOWLEDGE OF INSOLVENCY—
INTENT.—A transfer of property whereby one creditor is preferred
is not void unless such creditor has actual knowledge of the
debtor's insolvency and of his intention to defraud his creditors,
or has knowledge of facts sufficient to put an ordinarily prudent
man upon inquiry.

[6] ID.—INADEQUACY OF CONSIDERATION — EVIDENCE OF FRAUDULENT
INTENT.—Proof of inadequacy of consideration is not alone suf-
ficient to establish fraudulent intent on the part of the vendor,
participated in by the vendee, which will invalidate the transaction,
unless the inadequacy is so manifest as to shock the moral sense
and create on its mere mention a suspicion of fraud.

[7] ID.—CASE AT BAR—FINDINGS—EVIDENCE.—In this action by a
judgment creditor to set aside a conveyance of real property
alleged to have been made with intent to delay and defraud
creditors, there was nothing in the record to support the findings
of fraud, whether considered as constructive or actual.

APPEAL from a judgment of the Superior Court of Modoc
County. Clarence A. Raker, Judge. Reversed.

The facts are stated in the opinion of the court.

Daly B. Robnett for Appellants.

Jamison & Wylie for Respondent.

CHIPMAN, P. J.—Plaintiff is a judgment creditor of John
Stewart and brings the action to set aside a deed made by said
Stewart and wife to their codefendant, Mary E. Wickliffe,
conveying to her certain land described in the complaint. It is
alleged in the complaint that, at the time said deed was exe-
cuted, to wit, December 22, 1915, defendant Stewart was wholly
insolvent and "the consideration named in said deed was the
sum of ten dollars," and that the land so conveyed was then
and is now "reasonably worth the sum of five thousand dol-
lars." It is further alleged, on information and belief, that said
deed was executed "for a grossly inadequate consideration,
with intent to hinder, delay, and defraud the creditors of the
said John Stewart, including this plaintiff, and that the said
defendant Mary E. Wickliffe accepted and received the said
deed with knowledge of said fraudulent intent on the part of

5. Invalidation of transfer of property for good consideration by
transferee's participation in intent of transferrer to defraud creditors,
note, 32 L. R. A. 40.

the said John Stewart and with the intent upon her part to assist the said John Stewart in his said fraudulent purpose, and to hold the said lands as a secret trust for the said John Stewart in order that he might occupy the same and receive benefits therefrom, regardless of his said creditors and their claims including the claim of this plaintiff as aforesaid"; that the said John Stewart "has no other property, other than the aforesaid lands, out of which this plaintiff can realize and collect his said judgments or any part thereof."

Defendants demurred to the complaint on the grounds: 1. Insufficiency of facts; 2. That two causes of action have been improperly united in this: that an attempt is made to set forth a cause of action to set aside a deed on the alleged ground that it was given in constructive fraud of creditors united with an alleged ground of actual fraud of creditors; 3. That the complaint is uncertain in that it cannot be ascertained therefrom whether or not the plaintiff (defendant Stewart) executed said deed in constructive fraud of creditors or in actual fraud of creditors; 4. That the complaint is uncertain in this: that it cannot be ascertained therefrom whether plaintiff is attempting to set aside said deed on the ground that it was given without consideration and when the grantors were insolvent or on the ground that there was no consideration, and that the deed was given with fraudulent knowledge and intent on the part of the grantors to defraud existing creditors; nor can it be ascertained from said complaint whether or not defendant Wickliffe had any knowledge of the existence of any other creditors of defendants, the Stewarts, when she accepted said deed.

The demurrer was overruled. Defendants, the Stewarts, answered: Admitted the execution of the said deed, but alleged that ten dollars was not the true and sole consideration therefor; that these defendants executed and delivered said deed "to said Mary E. Wickliffe at the instance and request of one D. O'Brien, and in satisfaction of a certain note and mortgage held by said D. O'Brien, assignee of Julia O'Brien, on the said property so deeded from these defendants, which said mortgage was for the principal sum of one thousand six hundred dollars and these defendants further allege that there was at said time, due said D. O'Brien from these defendants on account of said note and mortgage the sum of $1,795, and that said deed was given by these defendants in payment and

discharge of said note and mortgage and of the amounts so due thereon, to wit, $1,795 and the sum of five dollars cash''; denied that said lands were reasonably worth the sum of five thousand dollars or any sum in excess of one thousand eight hundred dollars; denied specifically the averments of the complaint alleging inadequacy of consideration for said deed or that it was executed to hinder, delay, or defraud creditors or plaintiff; or that defendant Wickliffe received said deed with knowledge of any fraudulent intent on the part of the grantors, or that she held said lands as a secret trust.

Defendant Wickliffe answered and, among other things, alleged that the consideration for said deed was as stated in the answer of her codefendants; denied that the consideration for said deed was inadequate or that the deed was executed with fraudulent intent or to hinder, delay, or defraud creditors or that this defendant had any knowledge of such intent; and denied that when said deed was executed she had any knowledge of the existence of any creditors of said Stewarts or of the claim of plaintiff.

The court made the following findings of fact:

I.   That plaintiff recovered judgment against the defendant, John Stewart, on October 28, 1916, as alleged in the complaint, for the sum of $3,232.23.

II.   That, prior to December 22, 1915, defendant, John Stewart, and wife executed and delivered to Julia O'Brien their note for one thousand six hundred dollars, secured by mortgage on said land, and that subsequently, prior to December 22, 1915, she assigned said note and mortgage to her father, Dennis O'Brien.

III.   That, on December 22, 1915, defendants Stewart and wife executed and delivered to defendant Mary E. Wickliffe, daughter of Dennis O'Brien, ''their deed to the lands described in the said complaint at and for an alleged consideration of ten dollars.''

IV.   ''That at the time the said deed last aforesaid was executed to the said Mary E. Wickliffe there was due and owing to the said Dennis O'Brien, upon said note and mortgage, the sum of $1,795, and that at or about the time of the execution of said deed the said Dennis O'Brien paid to the said John Stewart the sum of five dollars in cash and released and satisfied the said note and mortgage. And thereupon the said Mary E. Wickliffe went into the possession of said lands

and the whole thereof and has remained in possession thereof ever since the execution of said deed, receiving the rents and profits thereof, and that the full amount for which said mortgage is a lien upon said property against the said judgments of plaintiff is the said sum of $1,795, with no accrued interest since December 22, 1915.''

V.   That, at the time the Stewarts executed said deed, ''the said John Stewart was indebted to plaintiff in a large sum of money, to wit, the amounts set forth in the aforesaid judgments,'' and at that time the said John Stewart had no property subject to execution except said lands, but was then and ever since has been, and now is, insolvent.

VI.   That said land, at the time of the execution of said deed and ever since, has been of the value of five thousand dollars, and ''that the equity of redemption owned by the said defendant John Stewart in the said land at the date of the execution of the said last-named deed was, ever since has been, and now is of the value of three thousand two hundred dollars.''

VII.   ''That the only consideration that was paid to the said John Stewart for the conveyance of said land to the said Mary E. Wickliffe, or ever received by him for said conveyance, was the sum of five dollars, and the said last-named sum was received and accepted by the said John Stewart in full settlement and satisfaction for all his right, title, and interest in said lands over and above said mortgage lien and debt, that is to say, for his equity of redemption in the said lands.''

VIII.   ''That the said conveyance and deed was executed by the said John Stewart and Ida E. Stewart, his wife, to the said Mary E. Wickliffe for a grossly inadequate consideration with the intent, upon their part, to hinder, delay, and defraud the creditors of the said John Stewart including this plaintiff, and that the said defendant Mary E. Wickliffe accepted and received the said deed with knowledge of said fraudulent intent, and with the intent upon her part of assisting the said John Stewart and the said Ida E. Stewart, his wife, in such fraudulent purpose, and to hold the said lands in secret trust for the said John Stewart and Ida E. Stewart in order that they might occupy the same and receive benefits therefrom regardless of the creditors of the said John Stewart including this plaintiff.''

As conclusions of law the court found: That defendant, John Stewart, is the owner of the lands in question; that he is now and was, when he and his wife executed the deed referred to, indebted to plaintiff as alleged in the complaint; that Stewart and his wife executed and delivered the aforesaid deed to defendant Wickliffe with intent to hinder, delay, and defraud his creditors and particularly to defraud this plaintiff, ''and that said Mary E. Wickliffe accepted and received the said deed with the knowledge of the fraudulent intent on the part of the said John Stewart and Ida Stewart, with the intent upon her part to assist the said John Stewart and Ida E. Stewart in said fraudulent purpose and to hold the said lands as a secret trust for the said John Stewart in order that he might occupy the same and receive the benefits therefrom regardless of his creditors and their claims including the claim of this plaintiff''; that the defendants, the Stewarts, at the date of the execution of said deed, were, ever since have been, and now are insolvent; that the said deed is fraudulent and void; that plaintiff is entitled to a decree adjudging that said deed is void, ''and that the said lands be sold, subject to the said mortgage, and the proceeds thereof applied in satisfaction upon the said judgments, interests, and costs, and that plaintiff have judgment'' for costs of this suit. Judgment was accordingly entered, from which defendants appeal.

In presenting his case, plaintiff introduced the judgment-roll showing defendant John Stewart's indebtedness to plaintiff as alleged; also execution issued on said judgment, showing return, judgment wholly unsatisfied; also deed of Stewart and wife to Mary E. Wickliffe, dated December 22, 1915, referred to in the complaint. Plaintiff testified as a witness in his own behalf that said judgment is wholly unpaid; that defendant, John Stewart, at the time said deed was recorded, owned no property other than the land in question, and has had no property since and has none now out of which said judgment or any part of it could be satisfied; that the land consisted of eighty acres near Cedarville, ''worth about sixty dollars an acre,'' and eighty acres of timber land, worth ten dollars per acre. Other witnesses testified to the value of the land, placing it at a figure justifying the finding of the court as to value. Upon this evidence the plaintiff rested.

Defendants moved for a nonsuit on the ground "that plaintiff has failed to show any fraud in this transaction showing the deed was made to defraud any creditor or for the purpose of hindering or delaying any creditor of John Stewart or Ida E. Stewart; and particularly, that they have failed to show that Mary E. Wickliffe had knowledge of any such design to defraud any creditor whatever"; that plaintiff has "failed to show that the deed was given in constructive fraud of creditors as defined by the Civil Code in section 3442, that it is a voluntary transfer without any consideration by the party who contemplates such fraud. The Court: I will hear the evidence in this case, and see what you have got. The motion for a nonsuit is denied."

We will not stop to consider the ruling of the court upon the motion for a nonsuit, inasmuch as the subsequent proceedings disclosed the facts as to the transaction in its entirety and furnish a safe basis on which to rest the decision.

It appeared, without conflicting evidence, that Stewart had been indebted to O'Brien for some time and on August 1, 1912, the note and mortgage were executed to cover the indebtedness, including interest and also taxes paid by O'Brien, amounting in all to one thousand six hundred dollars. The note was made payable to Julia O'Brien, daughter of Dennis O'Brien, and by her later transferred to him. The note being past due and no part of the interest having been paid, O'Brien wrote Stewart that a settlement must be made. Stewart went to Alturas and met O'Brien and it was agreed that Stewart and wife would convey the land to O'Brien in discharge of the note and mortgage and five dollars in money. On December 22, 1915, the indebtedness amounted to $1,795. O'Brien paid Stewart five dollars in money, surrendered the note to Stewart and canceled the mortgage of record, and by his direction Stewart and wife deeded the property to O'Brien's daughter, defendant Mrs. Wickliffe, the consideration being in fact one thousand eight hundred dollars, although the deed mentioned ten dollars as the consideration. Both O'Brien and his daughter, Mrs. Wickliffe, testified that they knew nothing of Stewart's indebtedness to any·person other than O'Brien and that they had no intention of defrauding any creditor of Stewart; Mrs. Wickliffe testified that she received the deed as a gift of the land from her father and he testified that in other transactions he had made like gifts to others

of his children, stating instances; Stewart testified that he made the transfer because he could not pay the principal or interest and he wanted to avoid expense of foreclosure, and both he and O'Brien testified that they were acting in good faith, with no intention to hinder or delay or defraud other creditors. O'Brien testified that he believed he was making a fair settlement and allowing a fair value for the land. On his cross-examination, defendant John Stewart was asked the following questions: ''Now, you owed Mr. O'Brien $1,790 dollars on the mortgage, so you sold your right of redemption in that land for five dollars, didn't you? A. I don't know what you call it; I just gave him the ranch to pay the mortgage, that was the only thing I done; I wanted to pay the mortgage.'' O'Brien's testimony was that Stewart and wife conveyed the title to the land in consideration of five dollars in money and the surrender of the note given by Stewart and wife and the cancellation of the mortgage. On cross-examination, he testified: ''Q. Didn't you agree with John Stewart at the time this deed was made that he should remain in possession of the property a certain length of time? A. No, sir, we had no agreement at all about that.'' Stewart testified on cross-examination: ''Q. What was the arrangement between you and Dennis O'Brien by which you remained in possession of this property? A. There was no arrangement at all, only I turned the deed over to him. Q. You had been living on the property ever since? A. I rented it. Q. Where is your lease, if you rented it? A. Well, I guess it is right here; I think it is.''

It appeared that some time after the deed was delivered Mrs. Wickliffe leased the land to Stewart for the term of five years at the annual rental of $250. The lease contained the following provision: ''The said lessee, as the lessee, has the privilege of buying the above-described property at any time during the duration of this lease.'' The testimony of the parties to the transfer of the premises was that the leasing of the property was arranged after the transfer of the title and that there was no understanding as part of the transaction that Stewart was to have the property back on payment of the debt. Stewart testified that he wanted a place for his family while he was away at work in Nevada and he turned the place over to his son, who paid the rent. Mrs. Wickliffe testified that Mr. Stewart's son paid the rental.

The testimony was that there was no definite agreement as to what Stewart was to pay in repurchasing the land. The matter seems to have been left as stated in the lease. The deed was acknowledged December 22, 1915, and was recorded December 24, 1915; the present action was commenced January 11, 1917.

The evidence in rebuttal consisted exclusively of testimony of the value of the land. On this question there was a conflict but, as before remarked, there was sufficient to justify the finding of the court.

It remains to apply the law to the foregoing facts. While the complaint seems to combine charges of constructive fraud and actual fraud, the case was tried and decided, as the findings of fact show, upon the issue of actual fraud.

We had occasion to consider the question of constructive fraud in *Hopkins* v. *White,* 20 Cal. App. 234, 246, [128 Pac. 780, 785]. We there said: "In a case where constructive fraud is relied on, it is necessary to allege the fraudulent intent, under section 3442. (*Schell* v. *Gamble,* 153 Cal. 448, [95 Pac. 870].) **[1]** It is only by reason of the proviso in that section that fraud becomes established constructively or as matter of law. (*Cook* v. *Cockins,* 117 Cal. 140, [48 Pac. 1025]; *Gray* v. *Brunold,* 140 Cal. 615, [74 Pac. 303].) Section 1573 of the Civil Code provides that constructive fraud is 'any such act or omission as the law specially declares to be fraudulent.' **[2]** The transfer of property with intent to delay or defraud creditors is declared by section 3439 of the Civil Code to be void as to creditors. But the intent in such a case is a question of fact and is not to be presumed from the mere fact of the transfer, for section 3432 expressly provides that 'a debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand, in preference to another.' (*McKee* v. *Title Ins. & Trust Co.,* 159 Cal. 206–217, [113 Pac. 140].) It is only where the transfer is 'made or given voluntarily, or without a valuable consideration, by a party while insolvent or in contemplation of insolvency,' that the statute declares such transfer to 'be fraudulent and void as to existing creditors.' (Civ. Code, sec. 3442.)"

**[3]** In no legal sense can the deed in the instant case be said to have been made voluntarily. And we think it quite clear that it was supported by a valuable consideration. "A

valuable consideration is such as money or the like and the adequacy or inadequacy of the amount, or its disproportion to the actual value of the property, does not affect the kind of consideration. The adequacy of the consideration is an element of the good faith of the transaction, and has no bearing upon whether the consideration is a valuable or good one." (*Lindley* v. *Blumberg,* 7 Cal. App. 140, 147, [93 Pac. 894, 897], citing cases.) Respondent contends that the words "valuable consideration," as found in section 3442 of the Civil Code, "could have but one meaning, and that was, a value commensurate with that of the property conveyed," citing *Carter* v. *Richardson,* 22 Ky. Law Rep. 1204, [60 S. W. 397]. In that case the sale was for cash of a stock of sample goods for what the court felt authorized to assume was fifty per cent of their value. The conduct of the vendor, at the time and immediately after receiving the pay check, together with other circumstances mentioned in the opinion, led the court to conclude that the consideration was not a "valuable" one. Among the circumstances, the court stated that the vendee learned of the fraudulent intention of the vendor shortly after delivering his check in payment and had ample time to stop payment but did not. A large part of the goods was new; the vendee had the invoices, showing values, before him. It was in view, we think, of the circumstances shown, as well as the fact that the purchase price was but fifty per cent of the value, which led the court to say that the price was so inadequate as to "cause surprise, or warrant a suspicion of fraud or contrivance, on the part of the purchaser."

[4] The deed being supported by a valuable consideration, the burden of showing that it was made with fraudulent intent was upon the plaintiff. (*Goldner* v. *Spencer,* 163 Cal. 317, [125 Pac. 347].) We are unable to discover sufficient evidence to justify the finding of fraudulent intent upon the part of Stewart and wife in making the deed. And there is not the slightest evidence tending to show that either O'Brien or his daughter, Mrs. Wickliffe, knew of Stewart's insolvency, or that he was seeking to hinder, delay, or defraud his creditors in making the deed. [5] The intent of Stewart to prefer O'Brien as a creditor, if shown, would not be sufficient to justify the findings of the court, for it has frequently been held that a debtor may exercise a preference in the payment of creditors. It was essential to show that O'Brien and Mrs.

41 Cal. App.—7

Wickliffe had actual knowledge of Stewart's insolvency and of his intention to defraud his creditors (*Goldner* v. *Spencer, supra; Scheolle* v. *Finnell*, 167 Cal. 90, [138 Pac. 746]), or that they had knowledge of facts sufficient to put an ordinarily prudent man upon inquiry.

[6] The rule as to inadequacy of consideration is variously stated in the books, but with substantial agreement: "Proof of inadequacy of price is not alone sufficient to establish fraudulent intent on the part of the vendor, participated in by the vendee, which will invalidate the transaction, unless the inadequacy is so manifest as to shock the moral sense and create on its mere mention a suspicion of fraud. (12 R. C. L. 542.) "Inadequacy, . . . may be evidence of fraud, which, however, in order to avoid a deed must be so glaring as to stamp the transaction with fraud and to shock the common sense of honesty, as where it is gross and coupled with such facts as that the vendor was illiterate, weak-minded, or in necessitous circumstances." (8 R. C. L. 963.) In support of the text, *Feigley* v. *Feigley*, 7 Md. 537, [61 Am. Dec. 375, 379], is cited. In that case there was no evidence in the record as to the fraudulent participation of the grantee of the deed other than the mere inadequacy of consideration contained in the deed. The consideration on which the deed rested was two hundred dollars, while the property conveyed was estimated as worth seven or eight hundred dollars. Said the court: "It is not such glaring inadequacy as of itself to stamp the transaction with fraud, by shocking the common sense of honesty, and thereby render the deed void." The rule stated in Am. & Eng. Ency. of Law, volume 14, page 516, is as follows: "Inadequacy of consideration where the vendor is greatly indebted is recognized as a mark of fraud, and while it is not of itself, unless very great, sufficient even as against creditors of an insolvent vendor to authorize the court to find fraud as a conclusion of law, it is one of the circumstances which may be considered by the jury in determining the question of fraud in fact, and may become a controlling force coupled with other circumstances tending to prove fraud."

[7] We do not think the disproportion alone of the price paid in the present case to the value of the property as found by the court is so great as to justify an inference that O'Brien or Mrs. Wickliffe knew of or was put upon inquiry as to Stewart's insolvency, or that he intended by the conveyance

to hinder, delay, or defraud his creditors. There was no evidence that O'Brien knew or had reason to believe that he was getting property worth five thousand dollars for one thousand eight hundred dollars. His testimony was that he believed he was allowing a fair price for it. It would seem to us that before fraud should be imputed to him it should appear that he knew or had reason to believe that the consideration was grossly inadequate. Nor do we think that any of the circumstances shown attending the transfer were of a character calculated to arouse suspicion that fraud was intended. The circumstance, aside from inadequacy of price, relied upon by respondent is the fact that Stewart remained in possession under the lease above referred to, which is spoken of as a "secret arrangement" because not recorded. If as a condition to passing the title it had been agreed that Stewart was to remain in possession with the right to a reconveyance upon payment of the debt, it would have changed the complexion of the transaction and would have amounted to no more than a mortgage. But there was no evidence that such was the case. The undisputed testimony was that the agreement to lease with the privilege of purchase was made after the sale and had nothing to do with the transfer of the title. It is not reasonable, under the circumstances appearing, that O'Brien would have taken a deed which amounted to no more than a mortgage. It was perfectly legitimate for the grantee after absolute title passed to lease the land to Stewart or anyone else with the privilege of purchase.

The finding, marked VII, that the only consideration paid Stewart for the conveyance was five dollars and that said sum was received by him "for his equity of redemption in the said lands" is wholly unsupported. The undisputed evidence was that Stewart received not only five dollars in money but the discharge of his indebtedness to O'Brien. In the transaction nothing was said or done with reference to any equity of redemption.

We are unable to find in the record support of the findings of fraud, whether considered as constructive or actual.

The judgment is reversed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 3, 1919.

All the Justices concurred, except Olney, J., who voted for granting the petition, and Melvin, J., who was absent.